**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**C. BASIL FORD, INC.,**

                             **Plaintiff,**                06-CV-0766A(Sr)

**v.**

**FORD MOTOR COMPANY,**

                             **Defendant.**

---

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #4.

Currently before the Court is defendant's motion to dismiss the complaint (Dkt. #3) pursuant to Fed.R.Civ.P. 12(b)(6). For the following reasons, it is recommended that defendant's motion to dismiss be granted in part and denied in part.

## FACTUAL BACKGROUND

Plaintiff has been an authorized Ford dealer in the Buffalo, New York metropolitan area since April 1985. Dkt. #3-3, pp.5-6. Charles J. Basil is the President and Chief Executive Officer of plaintiff. *Id*. at p.6. Pursuant to the terms of its Sales and Service Agreement with defendant, plaintiff agreed to a "Dealer's Locality" and "Dealership Location." Dkt. #3-6, p.5. As defined in the Sales and Service Agreement,

the "Dealer's Locality" is the area of the dealer's sales and service responsibility for company products. *Id*. The "Dealership Location" is the place or places of business of the dealer for carrying out the Sales and Service Agreement. *Id*.

Ford has several dealers in the Buffalo, New York area in what is commonly referred to in the industry as a "multiple point market." Dkt. #3-2, p.3. Each dealer is assigned a primary market area ("PMA") within the multiple point market to enable Ford to track each dealer's sales. Dkt. #3-3, p.6. Ford's Sales and Service Agreements, including its Sales and Service Agreement with plaintiff, do not reference the PMAs. Dkt. #3-2, p.4. Moreover, nothing provides a dealer with exclusivity within its PMA. *Id*. However, paragraph 5 of the Sales and Service Agreement does require the dealer to notify Ford in writing if the dealer plans to substantially modify or change the usage of the dealership location and facilities for company products. Dkt. #3-6, p.11. Specifically, paragraph 5(c) of the Sales and Service Agreement provides:

> The Dealer shall not move or substantially modify or change the usage of any of the DEALERSHIP LOCATION or FACILITIES for COMPANY PRODUCTS, nor shall the Dealer or any person named in subparagraphs F(I) or F(ii) hereof directly or indirectly establish or operate in whole or in part in any other location or facilities for the sale or service of COMPANY PRODUCTS or the sale of used vehicles without the prior written consent of the Company. Any such change shall be evidenced by a new Dealership Facilities Supplement executed by the Dealer and the Company. To ensure that all data included on the Dealership Facilities Supplement are reasonably accurate, the Company and the Dealer shall execute a new Dealership Supplement at least once every five (5) years.

*Id*.

West Herr Ford of Amherst and West Herr Ford of Hamburg are two other Ford dealers within the Buffalo, New York multiple point market.  Dkt. #3-3, p.6.  Plaintiff alleges that West Herr Ford of Amherst and West Herr Ford of Hamburg do business under a separate entity known as the West Herr Auto Group.  Dkt. #3-3, p.6.  On May 15, 2005, plaintiff learned through a radio advertisement that West Herr Ford was planning a "huge used car sales event ... at the Walden Galleria scheduled for May 19th, 20th and 21st."  Dkt. #1, Exhibit D, ¶ 15.  On May 16, 2005, plaintiff contacted Ford "to protest the sale" and spoke with Kirk Prieser, District Operations Manager for the region that includes Western New York.  *Id*. at ¶ 16.  Plaintiff was advised by Kirk Prieser on May 17, 2005 that Ford would take no action with respect to the sale.  *Id*. at ¶ 18.  By letter dated May 18, 2005, Charles Basil notified Ford's Regional Sales Manager in Pittsburgh, Pennsylvania that the West Herr Auto Group was planning to hold a used car sales event at the Walden Galleria on May 19 to May 21, 2005 inside plaintiff's PMA.  Dkt. #3-3, pp.8 and 25-26.  Specifically, in his May 18, 2005 letter, Charles Basil stated that the Walden Galleria is "no more than .8 mile from my dealership location and within my Primary Market Area..."  Dkt. #3-3, p.25.  On May 18, 2005, Ford's Regional Sales Manager responded to Charles Basil's letter stating in pertinent part:

> While we appreciate your concerns with the planned used car sales event, subparagraph 5(c) of the Ford Sales and Service Agreement is not applicable.  West-Herr [sic] Ford, Hamburg, NY or West-Herr [sic] Ford of Amherst, Getzville, NY [sic] are not modifying or changing the Dealership Location.
>
> The used car sales event is being marketed and advertised generically by West Herr Auto Group not West-Herr [sic]

> Ford. Therefore, under these circumstances, the Ford Sales and Service Agreement has no jurisdiction over a used car sale that is not being represented as "Ford".
>
> We have contacted management of both West-Herr [sic] Ford dealerships and counseled with [sic] them regarding the following:
> - New Ford Brand vehicles are not permitted to be displayed or sold during the event
> - Program vehicles obtained at the Ford Auction in inventory less than 30 days are not permitted to be sold or displayed during the event
> - Use of Ford trademarks or Dealership trade names associated with Ford during the event are not permitted [sic]

Dkt. #3-3, p.28.

By letter dated May 19, 2005, Ford's Regional Market Representation Manager confirmed that the Walden Galleria used car sales event was being initiated, marketed and advertised by West Herr Auto Group, not West Herr Ford. Dkt. #3-3, p.41. Moreover, the letter advised that certain activities were not permitted to be part of the used car sales event. Specifically, the letter reiterated what was set forth in the May 18, 2005 letter:

> - New Ford Brand vehicles are not permitted to be displayed or sold during the event
> - Program vehicles obtained at the Ford Auction in inventory less than 30 days are not permitted to be sold or displayed during the event
> - Use of Ford trademarks or Dealership trade names associated with Ford during the event are not permitted [sic]

Dkt. #3-3, p.41. West Herr Auto Group held its used car sales event at the Walden Galleria from May 19, 2005 to May 21, 2005. Dkt. #3-2, p.5.

Plaintiff commenced this action on or about October 17, 2006 in New York State Supreme Court, Erie County alleging three causes of action against defendant, Ford Motor Company, *to wit*: breach of contract, breach of the implied covenant of good faith and fair dealing and negligent misrepresentation.  Dkt. #1, Exhibit D.  On or about November 24, 2006, defendant removed the action to the United States District Court for the Western District of New York on the basis of diversity of citizenship of the parties.  Dkt. #1.  In its first claim for breach of contract, plaintiff alleges that Ford breached the Sales and Service Agreement by permitting West Herr Ford dealers to encroach upon plaintiff's PMA in connection with the May 19, 2005 to May 21, 2005 used car sales event at the Walden Galleria.  Dkt. #1, Exhibit D; Dkt. #3-2, pp.5-6.  Plaintiff's second claim for breach of the implied covenant of good faith and fair dealing is also premised on the Sales and Service Agreement and is allegedly due to Ford's alleged failure to prohibit the used car sales event and the imposition of conditions on the used car sales event, which failure caused the sale to proceed.  *Id*.  Plaintiff's third claim against Ford for negligent misrepresentation is based on plaintiff's claim that it relied on material representations by Ford about territorial exclusivity and that Ford acted inconsistently with those representations when it failed to prevent the used car sales event at the Walden Galleria.  *Id*.  Moreover, plaintiff alleges that although Ford placed certain conditions on the used car sales event in order to induce plaintiff to acquiesce to the sale, Ford failed to enforce those conditions.  *Id*.

## **DISCUSSION AND ANALYSIS**

**Dismissal Standard**

The United States Supreme Court recently revisited the standard of review on a motion to dismiss and concluded that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 167 L.Ed.2d 929, 940 (2007) (internal citations omitted). In setting forth this standard, the Supreme Court disavowed an often quoted statement from its decision in *Conley v. Gibson* that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 943, *quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Supreme Court explained that

> This "no set of facts" language can be read in isolation as saying that any statement revealing the theory of the claim will suffice unless its factual impossibility may be shown from the face of the pleadings; and the Court of Appeals [for the Second Circuit] appears to have read *Conley* in some such way when formulating its understanding of the proper pleading standard ...

*Id.* at 943. The Supreme Court decried that

> On such a focused and literal reading of *Conley's* "no set of facts," a wholly conclusory statement of claim would survive

> a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some "set of [undisclosed] facts" to support recovery.  So here, the Court of Appeals specifically found the prospect of unearthing direct evidence of conspiracy sufficient to preclude dismissal, even though the complaint does not set forth a single fact in a context that suggests an agreement.  It seems fair to say that this approach to pleading would dispense with any showing of a "'reasonably founded hope'" that a plaintiff would be able to make a case ...

*Id.* at 944 (internal citations omitted).  The Supreme Court then limited *Conley* to describing "the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id.* at 945.  The Supreme Court reiterated that it did "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on it face." *Id.* at 949.

The Court of Appeals for the Second Circuit recognized that *Bell Atlantic Corp. v. Twombly* has created "[c]onsiderable uncertainty concerning the standard for assessing the adequacy of pleadings." *Iqbal v. Hasty*, 490 F.3d 143, 155 (2d Cir. 2007).  "After careful consideration" of that decision, the Court of Appeals has concluded that "the Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Id.* at 157-58.

**Evidentiary Standard**

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration "to facts stated on the face of the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999); *see also Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). "Where a plaintiff has relied on the terms and effect of a document in drafting the complaint and that document is thus integral to the complaint," the district court may consider the contents of the document "even if it is not formally incorporated by reference." *Broder v. Cablevision Systems Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (internal quotations omitted), *quoting Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). "If the documents referenced in the complaint contradict the facts alleged by the plaintiff, the documents control and the court need not accept as true the plaintiff's allegations." *Olin Corp. v. E.I. Dupont De Nemours and Corp.*, No. 05-CV-100S(Sc), 2006 WL 839415 (W.D.N.Y. March 27, 2006).

A district court may take judicial notice of documents filed in other courts to establish the fact of such litigation and related filings. *Kramer*, 937 F.2d at 774. A district court may also "take judicial notice of admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action." *Harris v. New York State Dep't of Health*, 202 F. Supp.2d 143, 173 n.13 (S.D.N.Y. 2002), *citing Kramer*,

937 F.2d at 774.  In the matter of *Pandozy v. Robert J. Gumenick, P.C.*, for example, the district court granted a motion to dismiss a cause of action for attorney malpractice on statute of limitations grounds where plaintiff's second amended complaint alleged continuous representation, but prior complaints in that action and other actions, as well as documents authored by plaintiff, stated that plaintiff had terminated the attorney. No. 07 Civ. 1242, 2008 WL 2190151, at *3 (S.D.N.Y. May 23, 2008).

**Application of New York Law**

Where jurisdiction is based on diversity of citizenship of the parties, the Court must apply the substantive law of the forum state.  "Federal courts sitting in diversity cases will, of course, apply the substantive law of the forum State on outcome determinative issues."  *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994), *citing Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).  Here, in reliance on paragraph 32 of the Sales and Service Agreement which provides in part, "[t]he parties intend this agreement to be executed as a Michigan Agreement and to be construed in accordance with the laws of the State of Michigan," Ford argues that Michigan law must be applied in resolving this dispute, including this Court's recommendation on the instant motion. Dkt. #3-6, p.31.  In contrast, plaintiff argues that the New York Franchised Motor Vehicle Dealer Act (the "Act") specifically prohibits, *inter alia*, a franchisor from requiring, by the terms of the franchise, that a dispute arising out of or in connection with the interpretation, performance or nonperformance of the parties to a franchise be determined through the application of any other state's laws.  N.Y. Veh.

& Traf. § 463(2)(t).  In other words, according to plaintiff, the choice of law provision in the Sales and Service Agreement is unenforceable because it violates New York law. In its reply memorandum, Ford maintains that the circumstances presented in this case fall squarely within one of the exceptions in the Act and any other statutory construction "could potentially violate the Contracts Clause of the United States Constitution."  Dkt. #11, p.1.

>New York's Vehicle & Traffic Law § 463(2)(t) provides, in pertinent part:
>
>2. It shall be unlawful for any franchisor ... (t) to require or attempt to require by the terms of the franchise that any dispute arising out of or in connection with the interpretation, performance, nonperformance of the parties to the franchise or in any way related to the franchise be determined through the application of any other state's laws or in a federal court sitting in a state other than New York or in a state court of a state other than the state of New York; provided, however, that the provisions of this paragraph shall not apply to: ... (2) any renewal of an existing franchise between a franchised motor vehicle dealer and a franchisor which contains a preexisting venue clause ...

The parties do not agree whether the existing Sales and Service Agreement is a renewal of an existing franchise.  Dkt. #8, p.10; Dkt. #11, p.2.  Notwithstanding the foregoing, whether or not there was a renewal is irrelevant to this Court's determination of which law applies, because under no circumstances can the second portion of the exception, *to wit*, "a preexisting venue clause" be satisfied.

Paragraph 32 of the Sales and Service Agreement is a choice of law clause, stating, in pertinent part, "[t]he parties intend this agreement ... to be construed in accordance with the laws of the State of Michigan."  Dkt. #3-6, p.31.  Neither

paragraph 32 nor any other paragraph in the Sales and Service Agreement provides for the choice of venue.  Although Ford seems to agree that the clause in the Sales and Service Agreement is indeed a choice of law provision, Ford argues that "reading 'preexisting venue clause' to include preexisting choice-of-law provisions avoids potential violations of the Contracts Clause."  Dkt. #11, p.3.  This argument improperly blurs the distinction between a choice of law clause and a choice of venue clause.  "A choice-of-law clause and a forum selection clause are not the same, and address different needs and concerns."  *Robbins & Myers, Inc. v. J.M. Huber Corp.*, No. 01-CV-0201E(F), 2001 WL 967606, *3 (W.D.N.Y. Aug. 23, 2001), *citing In re Lois/USA, Inc.*, 264 B.R. 69, 101 (Bankr. S.D.N.Y. 2001).  Accordingly, the choice of law clause in the Sales and Service Agreement cannot be construed as a choice of venue clause so as to trigger the exception in N.Y. Veh. & Traf. Law § 463(2)(t).  Thus, this Court finds that New York law applies to this dispute.

**Breach of Contract Claim**

"To make out a viable claim for breach of contract a 'complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'"  *Eternity Global Master Fund Ltd, v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004), *quoting Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).  In the instant case, assuming that all the allegations in the complaint are true as this Court must on a motion to dismiss, plaintiff has properly alleged all of the elements of a cause of action

for breach of contract. In the alternative, plaintiff asserts that it may also maintain its cause of action for breach of contract as a third party beneficiary. Dkt. #8. In support of its motion to dismiss, defendant argues that plaintiff cannot state a cause of action for breach of contract because defendant abided by the plain language of the Sales and Service Agreement. Dkt. #3-2. Moreover, defendant argues that the various provisions of the Sales and Service Agreement relied upon by plaintiff do not impose a duty upon Ford to prevent an off-site sale, such as the May 19, 2005 to May 21, 2005 sale at the Walden Galleria. Dkt. #11. Defendant's arguments in favor of its motion to dismiss plaintiff's breach of contract cause of action address the issue of whether plaintiff can succeed in proving that defendant breached the agreement, not whether plaintiff has properly pleaded a breach of contract cause of action. Accordingly, it is recommended that defendant's motion to dismiss plaintiff's breach of contract cause of action be denied.

**Breach of Covenant of Good Faith and Fair Dealing**

"Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Harris v. Provident Life and Accident Insurance Co.*, 310 F.3d 73, 80 (2d Cir. 2002), *citing Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992). Thus, although New York does indeed recognize a cause of action for breach of the implied covenant of good faith and fair dealing, where, as here, such a claim is duplicative of a breach of contract claim, the breach of the implied covenant of good faith and fair dealing claim should be dismissed. "A claim for breach

of the implied covenant 'will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of [sic] covenant of an express provision of the underlying contract.'" *ICD Holdings S.A. v. Frankel*, 976 F.Supp. 234, 243-44 (S.D.N.Y. 1997) (internal citations omitted); *Harris v. Provident Life and Accident Insurance Co.*, 310 F.3d 73, 80 (2d Cir. 2002).

In the instant case, plaintiff's first cause of action against Ford is for breach of contract, specifically, breach of paragraph 5(c) of the Sales and Service Agreement. The first cause of action alleges that pursuant to the Sales and Service Agreement, plaintiff was provided with an exclusive territory within which no competing franchise would be established or indirectly established or operated for the sale of used vehicles. Dkt. #1, Exhibit D, ¶ 44. Moreover, plaintiff further alleges that Ford has the duty and obligation to enforce the Sales and Service Agreement and does so routinely for its benefit and for the benefit of the individual Ford dealers. *Id*. Plaintiff further alleges that Ford was aware that a sale of used vehicles was going to take place and that despite the notice, Ford took several conflicting positions, none of which, according to plaintiff, enforced the terms of the Sales and Service Agreement. *Id*. at ¶¶ 49-50. Moreover, plaintiff alleges that even after Ford notified West Herr Hamburg and West Herr Amherst of certain conditions for the sale, Ford did not ensure that those conditions were followed. *Id*. at ¶ 51. Plaintiff claims that as a result of Ford's breach of the contract, plaintiff has been "damaged by the loss of current and future sales and

profits, diminution or loss of the value of the plaintiff's investment in the franchise, future profits, and business goodwill." *Id*. at ¶ 53.

Similarly, in its second cause of action, plaintiff alleges that Ford had an obligation to operate under the Sales and Service Agreement in good faith and with fair dealing. Dkt. #1, Exhibit D, ¶ 56. Notwithstanding this obligation, plaintiff alleges that Ford engaged in "inequitable conduct in the performance of its contractual obligations or undertakings" by failing to prohibit West Herr Hamburg and West Herr Amherst from conducting their used car sales event. *Id*. at ¶ 57. Moreover, as in its first cause of action, plaintiff alleges that Ford acted in a commercially unreasonable manner when it used its authority to impose conditions on the sale and then failed to enforce those conditions thereby allowing the sale to proceed. *Id*. at ¶ 59. As in plaintiff's first cause of action, its second cause of action seeks damages of "current and future sales and profits, diminution or loss of the value of the plaintiff's investment in the franchise, future profits, and business goodwill." *Id*. at ¶ 63.

The conduct underlying plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing is the same factual predicate as plaintiff's breach of contract claim and should be dismissed as redundant. *ICD Holdings S.A. v. Frankel*, 976 F.Supp. 234, 243-44 (S.D.N.Y. 1997); *Harris v. Provident Life and Accident Insurance Co.*, 310 F.3d 73, 80 (2d Cir. 2002). Accordingly, this Court

recommends that Ford's motion to dismiss plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing be granted.

**Negligent Misrepresentation Claim**

In order to state a claim for negligent misrepresentation, a plaintiff must establish that the defendant made a misrepresentation and: "(1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance." *Engler v. Cendant Corp.*, 434 F.Supp.2d 119, 132 (E.D.N.Y. 2006), *quoting Parrott v. Coopers & Lybrand, L.L.P.*, 95 N.Y.2d 479, 484 (2000). However, under New York law, absent an independent duty arising separately from the contract itself and owed by the allegedly breaching party, a breach of contract will not give rise to a tort claim. *Global Crossing Bandwidth, Inc. v. PNG Telecommunications, Inc.*, No. 06-CV-6415T, 2007 WL 174094 (W.D.N.Y. Jan. 22, 2007); *Agency Development, Inc. v. MedAmerica Ins. Co. of New York*, 327 F.Supp.2d 199, 206 (W.D.N.Y. 2004 ("a simple breach of contract may not be transformed into a tort unless a legal duty independent of the contract itself has been violated") (internal citations omitted); *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 389 (1987) ("[i]t is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.").

Plaintiff's third cause of action purports to state a cause of action for negligent misrepresentation.  However, plaintiff failed to allege a breach of a duty separate and apart from Ford's contractual obligations.  The alleged misrepresentations concerning the territorial exclusivity or PMA that was to be provided to plaintiff relate to matters arising under the Sales and Service Agreement and therefore, cannot survive dismissal and remain as an independent cause of action sounding in tort.  Similar to plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing, the factual underpinning of plaintiff's cause of action for negligent misrepresentation is duplicative of plaintiff's breach of contract claim.  Accordingly, it is recommended that defendant's motion to dismiss plaintiff's third cause of action for negligent misrepresentation be granted.

## CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that defendant's motion (Dkt. #3), to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) be **GRANTED** in part by dismissing plaintiff's second and third causes of action and **DENIED** in part as to plaintiff's first cause of action.

Accordingly, pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance.  *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  <u>Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report,</u>

<u>Recommendation and Order), may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Order and a copy of the Report and Recommendation to counsel for the parties.

**SO ORDERED.**

DATED:   Buffalo, New York
  February 27, 2009

**s/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**